SHELDON v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. December 29, 1911.)

1. RAILROADS (§ 357*)—INJURIES TO PERSONS ON OR NEAR TRACKS—TRACKS
   IN PUBLIC STREETS—REASONABLENESS OF USE.
   Where the tracks of a railroad are laid in a public street, it has a
   right to use the street in the operation of its trains, but the use must be
   reasonable, in view of the rightful use of the street by other travelers.
   [Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1235; Dec.
   Dig. § 357.*]

2. RAILROADS (§ 400*)—INJURIES TO PERSONS ON OR NEAR TRACKS—FRIGHTEN-
   ING HORSES—ACTIONS—QUESTIONS FOR JURY.
   In an action for an injury alleged to have been caused by plaintiff's
   horses being frightened by steam escaping from an engine of the defend-
   ant, evidence *held* sufficient to go to the jury as to the reasonableness of
   the operation of such engine.
   [Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1368; Dec. Dig.
   § 400.*]

Appeal from Trial Term, Oswego County.

Action by Curtis M. Sheldon against the New York Central &
Hudson River Railroad Company. From a judgment on a nonsuit,
plaintiff appeals. Reversed, and new trial granted.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS,
KRUSE, and ROBSON, JJ.

Giles S. Piper, for appellant.
Francis E. Cullen, for respondent.

SPRING, J. South Second street is an important street in the city
of Fulton, extending in a northerly and southerly direction; and the
track of the defendant is laid in said street along its westerly side.
Cayuga street intersects Second street, and the station of the defend-
and is immediately north of this intersecting street.

On the 24th of March, 1908, the plaintiff, a farmer, drove a team
of horses north along the easterly side of South Second street. The
horses were about five or six years old, gentle and steady, and plain-
tiff daily delivered milk to the railroad station with them, and they
had never shown any signs of fright when in proximity to trains or
engines. He had a lumber wagon containing some apples which he
was selling. His wife was with him in the wagon, and held the team
as he delivered the apples. He stopped his team near the easterly
curb in South Second street, and carried a crate of apples to the resi-
dence of a man named Nelson on the westerly side of the street, leav-
ing his wife in the wagon in charge of the team. As he reached the
rear of the house, he heard a train coming up South Second street
from the north and hurried back to his horses, taking hold of the reins
and standing by their heads. The train stopped at the station.

The plaintiff says the head of the engine was about 15 or 20 feet
from him, although the weight of the evidence is that the distance
is considerably greater than his estimate. As the train started up

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

a large volume of steam, with an unusually loud hissing noise, escaped from the engine, frightening the horses, causing them to run, and the plaintiff was thrown down and very seriously injured. He testified:

"I was standing nearer the curb than the tracks. I had turned the horses' heads off toward the curb. I stood in front of one horse. I stood toward the railroad tracks from that horse, so that I was between the team and the tracks. I was in front of one of the horses. When the train pulled up, it blew off this steam when it started. The train started, and this steam came right out all at once, and the team jumped. That is all I can remember at that time. I was thrown. It came right out in a volume, passed by me, went all over the team and me too. The team ran up in an alley between two buildings. I landed by the side of the street."

And again:

"It came out from the side in a large volume. It seemed to come out and spread as it came. It came fast, all to once. It came right out against me and the team. When that came out there and came over me, I could not look through the steam and see the engine. I was blinded by the steam. I couldn't see through it."

The witness Nelson testified that the steam came from cylinder cocks on the engine and out on the sidewalk. While he later testified that he was not certain that the steam came through the cylinder cocks, he said it escaped from under the steam chest behind the front wheels of the engine.

Mrs. Sheldon, the wife of the plaintiff, gave this description:

"When the train started, the steam came out. It came out like a loud hissing noise down to the ground, just behind the cow catcher on the .side of the engine; on my side. When I saw it, it looked like pencils; went right down to the ground. This was when it started. It came down to the ground, and then it would rise; cover us. I couldn't see; that is, when it got up to me, it covered me. It covered my husband and the horses. It came out in a cloud. The thing that it came out of was just on the side of the engine back of the cow catcher; well, I should say a little over the front wheels. It was round, kind of long. It did not come out as one continuous burst of steam. It came a loud hissing noise and a breaking, then again a loud hissing noise. The horses started when the steam struck them."

An engineer of long experience, testifying as an expert, said that the steam came either from open cylinder cocks or leaking cylinder heads. He also testified that it was unnecessary to have these cylinder cocks open in order to start the train. The fireman on the train testified on behalf of the defendant, and did not claim it was necessary to open the cylinder cocks to move the train, although it was going upgrade; but he testified that these cylinder cocks were not open, and that no unusual or unnecessary amount of steam escaped, nor did any puff out on these horses.

According to the testimony of the plaintiff and his witnesses the jury might have found that an extraordinary quantity of steam escaped from the engine, enveloping the team of the plaintiff, and accompanied with an unusually loud hissing noise.

[1] The defendant certainly had a right to use the street in the operation of its trains. It was obliged to stop them at the station, and

in starting this train and operating it the emission of some steam and the making of some noise were inevitable. It must, however, be borne in mind that South Second street was also used rightfully by the plaintiff, and the use of the defendant must be reasonable in view of the fact that others were lawfully traveling upon it. Doll v. Lehigh Valley R. R. Co., 52 App. Div. 575, 65 N. Y. Supp. 454. In Sherman v. N. Y. C. & H. R. R. R. Co., 137 App. Div. 880, 118 N. Y. Supp. 1141, recently decided by this court without an opinion, the plaintiff went with a horse and buggy to the railroad station of the West Shore Railroad at Jordan, and as she was near the engine of a train which had just arrived, steam escaped from under the cab of the engine with a "loud roaring noise," causing her horse to run, and he was stopped by some bystander. She started him along again, and the "steam and noise continued with great force," frightening the horse so he ran and sheered out to one side, throwing out and injuring the plaintiff. She was nonsuited at the Trial Term, and the judgment was reversed by this court.

In Felkel v. Syracuse, Binghampton & N. Y. R. R. Co., 132 App Div. 946, 117 N. Y. Supp. 1134, the plaintiff's horse, standing in the street, was frightened by the escape of steam from the defendant's engine with a loud noise, and ran away. Both the horse and sleigh were injured, and a recovery was sustained by this court. There are other authorities sustaining the same principle. Lenhart v. N. Y. L. E. & W. R. R. Co., 19 Wkly. Dig. 17, affirmed 98 N. Y. 635; Stamm v. Southern R. R. Co. of L. I., 1 Abb. N. C. 438.

[2] If the train was operated in the usual way and in a reasonably careful manner, as the jury might have found from the testimony, the defendant is not liable. If, however, there was an excessive amount of steam allowed to belch forth with a loud noise, frightening the horse of the plaintiff, then a cause of action is made out. It is not so important where the steam was emitted, or how the noise was made, provided they were extraordinary and unnecessary and caused the horses to become frightened.

The judgment should be reversed.

Judgment reversed, and new trial granted, with costs to appellant to abide event. All concur.